IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL DALE JONES, | § | |
| TDCJ-CID NO. 461579, | § | |
|     Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-2412 |
| | § | |
| NATHANIEL QUARTERMAN,[1] Director of | § | |
| the Texas Department of Criminal Justice- | § | |
| Correctional Institutions Division, | § | |
|     Respondent. | § | |

OPINION ON DISMISSAL

Petitioner Michael Dale Jones, proceeding *pro se* and *in forma pauperis*, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a disciplinary conviction for creating a disturbance and refusing or failing to obey orders. (Docket Entry No.1). Respondent has filed a motion for summary judgment (Docket Entry No.9), to which petitioner has filed a response. (Docket Entries No.16, No.17). After a thorough review of the pleadings, the motion for summary judgment, petitioner's response to respondent's motion for summary judgment, and the evidence in the record, including an audio recording of the disciplinary hearing, the Court will grant respondent's motion for summary judgment, and deny petitioner habeas relief.

I. BACKGROUND

The record reflects the following undisputed facts:

Around count-time on May 3, 2005, Officer Brown found petitioner sitting on the floor with his back against a wall in the North Hallway of the Estelle Unit of TDCJ-CID. He told petitioner

---

[1] Petitioner named Douglas Dretke, Director of the Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ-CID), as respondent. On June 1, 2006, Nathaniel Quarterman succeeded Dretke as Director; therefore, the Court ORDERS the Clerk to substitute Nathaniel Quarterman as respondent in this case.

to get up several times. Petitioner informed Brown that he was dizzy, but Brown insisted that he get up. After several attempts to get petitioner to stand, Brown ordered petitioner to get up and to put his hands behind his back. Petitioner got up; Brown cuffed him and took him to the floor. Petitioner was taken to pre-hearing detention, where he remained until he was served with a disciplinary case on April 10, 2005.

Petitioner attended the disciplinary hearing with Counsel Substitute. He entered a plea of not guilty to the charge of refusing to obey an order and creating a disturbance. After hearing statements from petitioner, Officer Brown, Sgt. Rogers, and Lt. Curtis, and offender Willy Wicks's written statement, the disciplinary hearing officer ("DHO") found petitioner guilty as charged. He assessed punishment at forty-five days of commissary and cell restriction, fifteen days of solitary confinement, a reduction in class line status, and forfeiture of twenty days of good conduct time. Petitioner appealed the disciplinary conviction through the prison's grievance system but was denied relief.

Petitioner seeks federal habeas relief on the following grounds:

1. He was placed in pre-hearing detention for over 122 hours without being served with notice of a disciplinary offense;

2. He was denied the presence of a witness at the disciplinary hearing;

3. He was denied the opportunity to conduct a meaningful cross-examination of the witnesses at the hearing because the hearing officer disallowed thirty-four of the thirty-eight questions, which petitioner had prepared, on grounds that they were not relevant.

(Docket Entry No.1).

Respondent moves for summary judgment on the following grounds:

1. Petitioner has failed to state a claim with respect to the demotion in time-earning status, temporary solitary confinement and cell restriction, and loss of privileges because he cannot show that he has been deprived of a liberty interest;

2

  2. Petitioner fails to state a deprivation actionable in habeas with respect to the loss of his good conduct time credit because the loss of twenty days in a thirty-seven year sentence is *de minimis* and does not implicate due process;

  3. Alternatively, petitioner was not denied due process at the disciplinary hearing; and,

  4. Petitioner was not denied due process by his confinement in pre-hearing detention.

(Docket Entry No.9).

## II. ANALYSIS

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

### A. Lesser Sanctions

Respondent moves for summary judgment on the ground that the sanctions imposed, other than the loss of good time credits, do not implicate a liberty interest and therefore do not raise due process concerns. (Docket Entry No.9).

Prisoners charged with rule infractions are entitled to certain due process rights under the Fourteenth Amendment when disciplinary action may result in a sanction that impinges upon a liberty interest. *Hudson v. Johnson*, 242 F.3d 534, 535-36 (5th Cir. 2001). The changes in petitioner's confinement, *i.e.*, loss of commissary privileges, solitary confinement, cell restriction, and reduction in class line status do not impinge upon a liberty interest and therefore, do not implicate the Due Process Clause. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995) (confinement in administrative segregation); *Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000) (right to particular time-earning status); *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) (loss of commissary privileges and cell restriction); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1996) (loss of opportunity to earn good time credits).

Accordingly, respondent is entitled to summary judgment on this ground.

## B. *De Minimis* Injury

Respondent also seeks summary judgment on the ground that a *de minimis* loss of twenty days of good conduct time credit applied toward petitioner's thirty-seven year sentence is insufficient to trigger due process protection. (Docket Entry No.9).

Prior to September 1, 1996, the Texas mandatory supervision program created a constitutional expectancy of early release, for those who, like petitioner, were eligible for mandatory supervision. *Malchi v. Thaler,* 211 F.3d 953, 957-58 (5th Cir. 2000). Because, under the mandatory supervision program, a Texas prisoner does not have a constitutional expectancy of release on a specific day, "a *de minimis* delay of a few days in a prisoner's mandatory supervision release would not give rise to a constitutionally cognizable claim." *Id.* at 958. On the other hand, a six-month delay would be more than *de minimis* and may give rise to a constitutional claim. *Id.* In *dicta,* the Fifth Circuit has stated that "[a] 30-day delay of a mandatory supervision release might be *de*

4

*minimis* and therefore not give rise to a due process claim." *Richards v. Dretke,* 394 F.3d 291, 294 n. 5 (5th Cir. 2004).  Although petitioner's loss of twenty days of good conduct time credit appears to fit squarely within the concept of *de minimis*, the Court need not dismiss the petition on this ground because the record reflects that petitioner was afforded all the due process to which he was entitled at the disciplinary hearing.

## C. Disciplinary Hearing

Petitioner maintains he was denied due process because the DHO denied his request to have offender Willy Wicks testify at the disciplinary hearing and the DHO denied him a meaningful opportunity to cross-examine the officers who testified at the hearing.  (Docket Entry No.1). Respondent moves for summary judgment on the ground that petitioner was not denied his due process rights at the disciplinary hearing even though the DHO did not allow him to call offender Willy Wicks at the disciplinary hearing and the DHO limited the questioning of the accusing officers.  (Docket Entry No.9).

When a prisoner has a protected liberty interest in the loss of accrued good time credits, the revocation of such credits must comply with minimal procedural due process.  *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974); *Henson v. U.S. Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000). These minimal requirements are: (1) written notice of the alleged disciplinary violation at least 24 hours prior to a hearing; (2) the ability to call witnesses and present documentary evidence when not unduly hazardous to institutional safety or correctional goals; and (3) a written statement of the hearing officer as to the evidence relied on and the reasons for any disciplinary action taken.  *Wolff*, 418 U.S. at 564-66.  These requirements are flexible, however, and must necessarily be balanced against legitimate penological interests.  *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 454 (1985); *Wolff*, 418 U.S. at 556 ("[p]rison disciplinary proceedings are not

5

part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply"). Thus, prison officials can limit the evidence a prisoner presents when they can articulate legitimate reasons for doing so. *Ponte v. Real*, 471 U.S. 491, 495-98 (1985); *cf. Hill*, 472 U.S. at 454 (noting that due process generally requires the "opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in [a prisoner's] defense"). These reasons include "assuring the safety of inmates and prisoners, avoiding burdensome administrative requirements that might be susceptible to manipulation, and preserving the disciplinary process as a means of rehabilitation." *Hill*, 472 U.S. at 455.

The audio recording of the disciplinary hearing reflects the following: After the DHO read the charge against him, petitioner stated his version of the facts. When questioned by the DHO, petitioner conceded that he did not stand up when Brown ordered him to do so. Counsel Substitute read the statement of offender Willy Wicks, which petitioner had requested. She also presented evidence that petitioner's blood pressure had been 148 over 86. Counsel Substitute indicated that petitioner had requested the presence of the charging officer and Lt. Curtis and Sergeant Rogers.

Before questioning Officer Brown, Counsel Substitute objected that the DHO had marked out several questions. Both Counsel Substitute and petitioner questioned Brown about his orders, his attempts at resolution, the manner in which petitioner was being disruptive, why Brown handcuffed petitioner, and when the supervisor arrived on the scene. The DHO also questioned Brown. When petitioner attempted to question Brown about an allegation that petitioner had threatened Brown, the DHO struck the question as one that was not allowed.

Counsel Substitute questioned Lt. Curtis why petitioner was handcuffed and whether he had heard petitioner yelling. She and petitioner questioned Curtis about whether petitioner had threatened Brown or was in anyway disruptive. The DHO interrupted and asked Curtis whether he

6

had to stop count to deal with the situation.  Curtis responded affirmatively and the DHO asked if that created a disruption.  Curtis agreed that it did.  He also indicated that he did not observe the situation but relied on what Brown had told him.

Counsel Substitute also questioned Sgt. Rogers.  Rogers indicated that he had no knowledge of what had happened.  He indicated that he took petitioner to medical after the incident.

Petitioner then complained to the DHO that he wanted to question offender Wicks.  The DHO refused the request, stating that Wicks's written statement had been read into the record and that Wicks could not add to it.

Following Counsel Substitute's statement and petitioner's complaint about questions that were not allowed, the DHO asked if petitioner had anything to add that the DHO had not already heard. Petitioner responded that he did not.  Thereafter, the DHO summarized the charges and found petitioner guilty.  (Disciplinary Tape).

In the pending petition, petitioner complains that he was denied due process because offender Wicks was not allowed to testify at the hearing. (Docket Entry No.1).  In his response to the motion for summary judgment, petitioner explains how he was allegedly denied due process.  Petitioner claims that Officer Brown stumbled in his testimony under questioning, although he does not state how. (Docket Entry No.16).  He contends that the DHO attempted to rehabilitate Brown's testimony by asking Brown whether petitioner was sitting or standing when petitioner started to bang his cane. (*Id.*).  Petitioner indicates that the DHO then asked Brown why he asked petitioner to stand up to be cuffed if petitioner had not yet been disruptive. (*Id.*).  Petitioner claims he knew at that point, the hearing was biased.  (*Id.*). The DHO had only allowed him to ask Lt. Curtis a limited number of questions and had refused his request to call offender Wicks; therefore, he would not be allowed to refute Brown's testimony. (*Id.*).

7

In his sworn declaration in support of the response to the motion for summary judgment, petitioner further explains the necessity of Wicks's testimony. Petitioner claims he was charged with creating a disturbance by banging a cane on the floor and yelling loudly in the hallway and with refusing to stand up in the hallway when Officer ordered him to do. Petitioner claims the DHO, however, found him guilty on Officer Brown's testimony that Brown gave a direct order to stop yelling and banging the cane. (*Id.*). Petitioner claims he needed offender Wicks to testify to clarify what happened.

The disciplinary hearing report does not support petitioner's sworn statement. The report shows that petitioner was charged with the following violation:

> On the date and time listed above, and at north desk, offender, Jones, Michael Dale, TDCJ-ID No.00461379, did start banging on his cane on the floor and yelling loudly in the hallway which resulted in a significant disruption of operations in that, such acts caused count to be delayed for approximately 5 minutes. Offender Jones was ordered by M. Brown CO IV to stand up in the hallway and said offender failed to obey the order.

(Docket Entry No.10). The report states that petitioner was found guilty on Officer Brown's testimony that petitioner did not comply with his order when he gave it and petitioner banged his cane and yelled. He was also found guilty on Lt. Curtis's testimony that he had to stop count to deal with the situation. (*Id.*).

Prison authorities are accorded wide discretion in deciding whether certain witnesses will be called. *Wolff*, 418 U.S. at 566-69. A hearing officer may properly refuse testimony where that testimony is not relevant to the matter in controversy. *Id.* at 566. The record here shows that petitioner requested the presence of offender Wicks, Officer Brown, Sgt. Rogers, and Lt. Curtis. The DHO called the three correctional officers who were questioned by the DHO, Counsel Substitute, and petitioner. The DHO allowed Counsel Substitute to read Wicks's statement into the record but denied petitioner's request to call him for cross-examination. The DHO explained that

8

Wicks had nothing to add to his written statement and petitioner did not indicate otherwise. (Disciplinary Hearing Tape).

Moreover, petitioner fails to demonstrate how Wicks's testimony or Lt. Curtis's response to any questions on cross-examination would have altered the outcome of the disciplinary hearing. *See Banuelos v. McFarland*, 41 F.3d 232, 234-35 (5th Cir. 1995) (denying prisoner's due process claim that a hearing officer failed to call defense witnesses where the testimony of such witnesses would not have changed the outcome of the hearing and thus the prisoner did not demonstrate prejudice). Even if Curtis's or Wicks's testimony had refuted Brown's, Brown's testimony constitutes some evidence that petitioner failed to obey an order and that he was disruptive. Moreover, the DHO was entitled to find Brown's testimony credible. *See Richards*, 394 F.3d at 295 (noting that "[c]redibility determinations are the province of the hearing officer"). Accordingly, petitioner fails to show that his due process rights were violated by the DHO's denial of petitioner's request to call offender Wicks to testify at the disciplinary hearing.

Petitioner also complains that the DHO struck 34 of his 38 questions because they were irrelevant. (Docket Entry No.1). Specifically, petitioner complains that the DHO refused to allow him to ask Officer Brown whether Brown had attempted an informal resolution. (*Id.*). In his response to the motion for summary judgment, petitioner contends that such question was relevant because the answer was essential to his defense to prove that Brown intended to place petitioner in solitary confinement no matter what. (Docket Entry No.16).

A prisoner has no general right to confront or cross-examine witnesses at a prison disciplinary hearing. *Baxter v. Palmigiano*, 425 U.S. 308, 315, 322 n.5 (1976); *Wolff*, 418 U.S. at 567-68; *Hallmark*, 118 F.3d at 1080. "Prison officials can limit the evidence a prisoner presents when they can articulate legitimate reasons for doing so." *Henson*, 213 F.3d at 898.

In this case, plaintiff fails to show that the DHO violated his rights by refusing to allow him to question Brown as to whether Brown had attempted an informal resolution before ordering plaintiff to be cuffed and sent to pre-hearing detention. Although petitioner states that such question is essential to his defense, he fails to show its relevance in light of other evidence showing that Brown asked petitioner several times to get up, that petitioner admitted that he did not follow Brown's order, that petitioner banged his cane on the floor and yelled loudly, and that he created a disruption.

Even if the DHO abused his discretion in denying the petitioner's request to question Brown about an informal resolution, petitioner's due process claim would fail. "[I]f some of the procedural safeguards are overlooked, the petitioner must demonstrate resulting prejudice to establish a constitutional violation cognizable on federal habeas corpus review." *Turner v. Johnson*, 46 F.Supp.2d 655, 661 (S.D.Tex. 1999) (citing *Black v. Warren*, 134 F.3d 732, 734 (5th Cir. 1998) ("[a]ssuming TDCJ-ID procedural rules regarding notice and the right to call witnesses and present documentary evidence were violated, [petitioner] has not shown that such errors rise to the level of a constitutional due process claim")); *Hallmark*, 118 F.3d at 1080 (denying petitioner's due process claim that prison failed to provide written notice of the charges at least 24 hours prior to a hearing where the petitioner failed to explain how the failure was prejudicial to his defense). In this case, the evidence admitted during the disciplinary hearing was sufficient to support petitioner's disciplinary conviction. Petitioner fails to show that the exclusion of certain questions was prejudicial to his defense.

Because the record does not show that petitioner's rights as set forth in *Wolff* have been abridged, the Court will grant respondent's motion for summary judgment on this ground.

### D. Pre-Hearing Detention

Petitioner claims that he was placed in pre-hearing detention and was not served with a disciplinary case for over 122 hours in violation of TDCJ-CID's rule that a hearing be held within seventy-two hours.[2]  (Docket Entry No.1).

Respondent moves for summary judgment on the ground that petitioner's placement in pre-hearing detention for 122 hours prior to the disciplinary hearing did not violate the Due Process Clause of the Fourteenth Amendment.  Respondent contends that TDCJ-CID regulations were not violated by the confinement and that if the regulations were, petitioner's claim would amount to no more than a violation of state administrative policy, for which habeas relief is unavailable.  (Docket Entry No.9).

Federal habeas corpus review is available only for the vindication of rights existing under federal law, not rights existing solely under the rules of state procedure or, as applicable in this case, administrative procedure.  *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).  Petitioner's placement in pre-hearing detention in this case "did not present the type of atypical significant deprivation in which a state might conceivably create a liberty interest."  *Sandin*, 515 U.S. at 486. Assuming without finding that TDCJ officials violated the seventy-two hour rule, the Court finds no violation of petitioner's federal constitutional rights.  A failure to follow institutional rules and regulations, standing alone, does not constitute a violation of petitioner's due process rights. *Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994).  Moreover, petitioner has not alleged how he was prejudiced by any failure of respondent to afford him a timely hearing.

Accordingly, respondent's motion for summary judgment will be granted on this ground.

---

[2]  The Disciplinary Rules and Procedures for Offenders requires the disciplinary hearing to be held within seventy-two (72) hours of the offender's placement in detention, whenever possible.  If the hearing is not held within this time period, the reason therefore shall be set forth in the record of the hearing.  Section II.B.1. (Docket Entry No.17, part 2).

11

### III. CERTIFICATE OF APPEALABILITY

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted). Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001). On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Beazley*, 242 F.3d at 263 (quoting *Slack*, 529 U.S. at 484); *see also Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000). A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). The Court has determined that petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability from this decision will not issue.

### IV. CONCLUSION

Based on the foregoing, the Court ORDERS the following:

1.  Respondent's motion for summary judgment (Docket Entry No.9) is GRANTED.

2. Petitioner's petition for a writ of habeas corpus (Docket Entry No.1) is DENIED.

3. Petitioner's petition is DISMISSED WITH PREJUDICE.

4. A certificate of appealability from this habeas action is DENIED.

5. All pending motions, if any, are DENIED.

The Clerk will provide a copy to the parties.

SIGNED at Houston, Texas, on July 27, 2006.

 

MELINDA HARMON
UNITED STATES DISTRICT JUDGE